[No. 6936. Decided December 10, 1907.]

## GEORGE PEYSER, *Respondent*, v. WESTERN DRY GOODS COMPANY, *Appellant*.[1]

CONTRACTS—CONSTRUCTION—TRIAL—QUESTION OF LAW — EMPLOYMENT OF AGENT. The construction of a contract of employment is for the court, and it is error to submit it to the jury, where a written contract provided for a salary based on five per cent commission on sales made and allowed the agent to draw $75 a month "on account," and the undisputed oral evidence, received without objection, showed that the parties had agreed that the agent was guaranteed $75 per month and expenses to be advanced monthly, and if sales on a basis of five per cent commission amounted to more than the advances, he was to be paid the same at the end of the season; and in such case the agent was not to receive his expenses and $75 in addition to the commissions.

Appeal from a judgment of the superior court for King county, Frater, J., entered May 8, 1907, upon the verdict of a jury rendered in favor of the plaintiff, in an action to recover an agent's commissions. Reversed.

*B. B. Crawford*, for appellant.

*E. P. Dole* and *J. E. McGrew*, for respondent.

1Reported in 92 Pac. 886.

MOUNT, J.—The respondent brought this action in the court below to recover a balance alleged to be due upon a contract. The complaint alleged:

"That early in August, 1906, the plaintiff contracted and agreed with defendant to enter the defendant's service and employment and to sell goods and merchandise for the defendant as a traveling salesman in Eastern Washington, for the following compensation, to wit: A commission of five per cent on the goods and merchandise to be sold by the plaintiff as aforesaid, and also his reasonable traveling expenses in the premises, the plaintiff being at liberty from the beginning to draw $75 per month on account of commissions;"

that the employment extended to December 12, 1906, during which time plaintiff sold goods to the amount of $25,941.30, and thereby earned commissions amounting to $1,296.06; that plaintiff's traveling expenses amounted to $1,015.59, the total being $2,311.65; that defendant had paid plaintiff sums aggregating $1,113.41, leaving a balance due plaintiff of $1,199.24. At the trial it was conceded that the traveling expenses of the plaintiff amounted to $661.90, and that the amount of $1,015.59, as alleged in the complaint, was an error. The answer denied the contract and amount of sales as stated in the complaint, and alleged in substance that the defendant employed the plaintiff at a salary based on five per cent of all orders secured by the plaintiff, which orders were accepted and goods shipped by defendant, plaintiff being allowed "a drawing account of $75 per month and reasonable traveling expenses;" that plaintiff had sold goods amounting to $18,658.97 and no more, and had been paid by defendant $89.11 in excess of the amount due him. The answer prayed for a judgment against the plaintiff in the sum of $89.11. Upon these issues the cause was tried to the court and a jury. A verdict was returned in favor of the plaintiff for $725. From a judgment entered on the verdict, the defendant appeals.

At the trial it was agreed that the contract of employment was made by a letter written by defendant in Seattle to the plaintiff in San Francisco, on July 3, 1906, as follows:

"We have your letter of the 27th ult. and in reply will say that it is Eastern Washington that we want a man to travel, with headquarters at either Spokane or Wenatchee. This job is open at the present time, and the salary will be based on five per cent commission of the sales, allowing the man to draw $75 per month on account. The young man that worked this territory for the past nine months sold $42,285.89 and he had no experience on the road, nor did he know the dry-goods business. We think that it will be a good territory for a man who has had experience. Should you care to take this matter up, kindly let us know at once, as the young man is very anxious to make a trip to Alaska but will not leave until we secure another man."

This offer was accepted by the plaintiff by a letter in which he stated in substance, "I accept your offer," and he reported to defendant for work on the first Tuesday or Wednesday in August, 1906. Plaintiff testified that at that time he had a conversation with Mr. Gwinn, manager of defendant company, as follows:

"So I came in and he says, 'Have you got that contract I sent you in 'Frisco?' and I says, 'No, sir, I haven't got that contract.' He says, 'Are you ready to start in,' and I said, 'Yes,' and he says, 'Now you know, Mr. Peyser, your salary is five per cent commission on your sales and we allow you to draw $75 a month on account,' and he takes one of these small books . . . he says, 'Now, Mr. Peyser, we pay your expenses every week. We furnish you with these books and at the end of the week you send the book in and the day we receive the book we mail you a check for expenses the following week.' "

Mr. Gwinn for the defendant testified in substance the same as the plaintiff as to what the conversation was after the written proposal had been accepted. He said:

"Mr. Peyser came up in answer to my letter and came down to the store and I told him about the matter . . . and

he asked something about salary. I told him it was based on a five per cent commission with a drawing account of $75 a month and necessary expenses. Mr. Peyser did not understand and asked me to explain the drawing account. I explained to Mr. Peyser that we guaranteed him $75 and necessary expenses. If his sales on a basis of five per cent commission amounted to more than that, we would pay him at the end of the season. In our business we call a season six months. . . . In other words, we guarantee you $75 a month and expenses regardless of your sales. If your sales at five per cent commission amount to more, we pay you."

This is substantially all the evidence as to what the terms of the contract were. This oral evidence went in on both sides without objection.

If the written contract was not clear or was ambiguous in any respect, it was because of the use of the words "on account." The letter quoted said nothing about expenses. Under the letter and its acceptance the respondent clearly agreed to sell goods at a commission of five per cent upon the amount of his sales, against which he could draw $75 per month. If this had been the whole contract, the meaning of the words "on account" was clear to the effect that he could draw $75 per month against his five per cent commissions, and no more until final settlement. But the item of expenses introduced a new element into the contract. This item was discussed and agreed upon before the respondent entered upon his work, and it is clear from the oral evidence that the appellant agreed to advance the expenses of respondent in addition to the $75 per month, and that the contract, as shown both by the written and the undisputed evidence, was that the respondent agreed to sell the goods at five per cent commission, and was guaranteed his expenses and $75 per month regardless of the amount of sales. If his sales amounted to more than his expenses and $75 per month advance, he was entitled to that difference upon settlement. There was substantially no dispute as to the terms of the contract in regard to the compensation. The respondent's evidence, while not as clear as that

of Mr. Gwinn upon the subject, shows that both his expenses and $75 per month were to be drawn against his five per cent commission, and on account thereof. It was therefore the duty of the court to instruct the jury what the contract was in that respect. The court, instead of doing so, submitted this question to the jury, and requested them to determine what the contract was, and in that connection instructed the jury as follows:

"I instruct you further, gentlemen, if you find from the evidence submitted to you in this case that the Western Dry Goods Company agreed to pay George Peyser a salary based upon five per cent commission upon all goods sold by Peyser and shipped by said company upon his orders, and that said company was to allow the said Peyser a drawing account of $75 per month and traveling expenses guaranteed, then in that event your verdict should be in favor of the defendant Western Dry Goods Company, and against the plaintiff George Peyser, if it should appear by a preponderance of all the evidence in behalf of the defendant that the defendant has paid the plaintiff all the traveling expenses and $75 per month for all the time he has been actually engaged in the defendant's employ and five per cent on all sales made by the plaintiff."

This instruction was clearly error, because it cannot be maintained under the facts that respondent was entitled to five per cent on all sales and his traveling expenses, and also $75 per month. Counsel conceded on the oral argument in this court that respondent does not claim $75 per month in addition to the five per cent commission and expenses, but sought to avoid the error of the trial court by saying that the instructions construed as a whole make it clear to the jury that the $75 per month was not claimed; but no part of the instructions was pointed out to us wherein the error was rectified, and we fail to find it in the instructions. Following the instruction above quoted, the court said to the jury:

"You are further instructed that the principal question in this case is whether the agreement between the plaintiff and defendant was to pay the traveling expenses of the plaintiff

in addition to the salary based on a five per cent commission of all goods sold."

But this instruction did not in the least modify the previous error, for no reference is there made to the $75 per month. The question submitted to the jury by this instruction was one for the court, as above discussed, and not for the jury. The only questions which should have been submitted to the jury under the pleadings and admitted facts were, first, the amount of sales upon which respondent was entitled to a commission of five per cent, and second, the amount of the payments, viz., salary and expenses. If the former was greater than the latter, respondent was entitled to a verdict for the difference. Otherwise a verdict should go for the defendant.

The judgment must be reversed, and the cause remanded for a new trial in accordance with this opinion.

RUDKIN, DUNBAR, ROOT, and FULLERTON, JJ., concur.

HADLEY, C. J. and CROW, J., took no part.